UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONELL HOWLETT,

    Petitioner,

v.                                           Case No. 16-C-261

REED RICHARDSON,

    Respondent.

**DECISION AND ORDER**

Petitioner Ronell Howlett filed this petition pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence were imposed in violation of the Constitution. Both sides have filed briefs. For the reasons given below, the petition will be dismissed.

**I. Background**

The Petitioner was convicted of three counts of sexual assault of a child under thirteen. The child in question was a nine-year-old student, and the Petitioner was a school bus driver. According to the state, the Petitioner induced the student to gratify him sexually in exchange for a cell phone and a bag of chips. The assaults occurred over a period of three days at the end of the school year. After the Petitioner was convicted, he filed two postconviction motions and two appeals, none of which were successful. This federal habeas corpus petition followed.

**II. Analysis**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015). This is an "intentionally" difficult standard to meet. *Id.* "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 103 (2011)).

**A. Ineffective Assistance of Trial Counsel**

The Petitioner has raised a number of arguments suggesting that his trial counsel was ineffective. To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). This is known as the *Strickland* standard, after *Strickland v. Washington,* 466 U.S. 668 (1984). In addressing this standard and its relationship to AEDPA, the Supreme Court in *Harrington v. Richter* gave the following explanation:

> To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id. at 689. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'
>
> "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...
>
> "'Surmounting *Strickland* 's high bar is never an easy task.' An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so

the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id. at 689; "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' id., at 689, and when the two apply in tandem, review is 'doubly' so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard."

562 U.S. 86, 105 (2011) (some citations omitted).

**1. Victim's Attendance Records**

The victim testified that the Petitioner assaulted her on three days "right in a row," which she believed was during "the 20's of May." The Petitioner argues that the victim did not actually attend school for three consecutive calendar days. In his view, his counsel should have introduced evidence of the victim's attendance records, which would have undercut her credibility. The state courts concluded that such evidence would not have made a difference. In particular, the court of appeals quoted the trial court's observation that the jury knew it was dealing with a young victim, who could not be expected to have perfect recall of the dates in question. There was nothing, in short, that turned on the statement that the assaults occurred on three consecutive days. Moreover, the jury could have interpreted the victim's testimony as meaning she was assaulted on three consecutive *school* days, rather than consecutive calendar days. The court found: "Her attendance records show that she was in attendance the following days: Wednesday, May 20, 2009; Thursday,

3

May 21, 2009; Tuesday, May 26, 2009; and Wednesday, May 27, 2009. School was not in session on either Friday, May 22, 2009, or Monday, May 25, 2009. Thus, while C.A. was noted to have been in school on three consecutive school days, she was not in school on three consecutive calendar days." *State v. Howlett,* 2013 WI App 84, ¶ 14, 348 Wis. 2d 763, 833 N.W.2d 873 (Wis. Ct. App. 2013).

It is hard to quibble with the state courts' resolution of this issue. First, it is not as though the victim clarified that she meant consecutive *calendar* days. In fact, given the circumstances, it is much likelier that the victim meant the assaults had occurred on three straight *school* days; after all, bus drivers and students typically do not have any interaction on days off or weekends, and so it would have been unusual to construe her testimony in the fashion the Petitioner now presses. In addition, as the state court noted, it is hard to believe the detail about three consecutive days was anything more than a circumstantial or tangential fact. Had it been actually been disproved by reference to the victim's attendance records, the jury would not somehow have concluded that she'd made the entire thing up. The state courts cannot be faulted for their view that cross-examination on the question of the victim's attendance would have been fruitless. The state courts' resolution of the question was eminently reasonable, and so federal habeas relief is unavailable.

**2. Failure to Impeach Based on Duration of the Assaults**

The Petitioner also argues that counsel was ineffective in failing to impeach the victim based on alleged discrepancies between her statement at the preliminary hearing and her testimony at trial. This is another non-starter. At her preliminary hearing, she stated that she had touched the Petitioner's penis for about two seconds on the first day, and for a little bit longer the next two days. At trial, however, she testified that it was a minute. The state courts made short work of this

4

argument, noting once again that the victim was a nine-year-old who could not be expected to testify with great precision as to the length of the assault. "No reasonable jury would hold a third-grader to such a precise standard," it concluded. *Id.* at ¶ 18. The court further noted that terms like seconds or minutes are often interchangeable, and are not intended to express any given level of specificity (particularly with a nine-year-old witness).

Once again, it is difficult to see how the state courts acted in contravention of controlling Supreme Court precedent. Counsel is not obligated to cross-examine every witness as to minor inconsistencies, and, even if he had, it is difficult to envision how such questions would have changed the jury's mind. Whether to cross-examine a witness on such matters is deeply within the purview of trial strategy that courts are loathe to second-guess. Even if some inconsistencies might emerge, counsel could reasonably conclude that they would be immaterial, or even that cross-examination would give rise to juror sympathy towards the young victim herself. I therefore cannot conclude that the state courts mis-applied *Strickland* in handling this question.

**3. Victim's Knowledge of Sexually Explicit Terms**

Petitioner also argues that counsel should have probed the victim's exposure to some of the explicit terms she said the Petitioner used during the assault. The victim's mother testified that the victim had used the kinds of terms that only an older man would have known, but the Petitioner believes the victim could have picked them up on the school playground, or elsewhere. He believes that because counsel failed to present evidence on that point, the case against the Petitioner was stronger than it should have been.

Once again, however, it is not enough to second-guess an attorney's presentation; a habeas petitioner must demonstrate that counsel's performance was so deficient that the trial was an

5

"extreme malfunction" of the state criminal justice system. *Harrington v. Richter,* 562 U.S. 86, 102-103 (2011). Here, the state courts concluded that the source of the victim's knowledge of the explicit terms in question was not a significant factor in the jury's verdict. The trial judge indicated that the victim was not attempting to corroborate her story by using the Petitioner's exact words, but merely explaining what he had done to her. In addition, the verdict was largely the result of the fact that a third-grader could explain in such great detail the kind of experience that is well outside of her expertise. *State v. Howlett*, 2013 WI App 84, ¶ 14, 348 Wis. 2d 763, 833 N.W.2d 873. These are eminently reasonable conclusions that follow controlling Supreme Court precedent. Habeas relief is therefore unavailable.

### 4. Failure to Object to Leading Questions and Hearsay

The prosecutor asked Officer Young a series of leading questions, allowing the witness simply to answer yes or no. *Id.* at ¶¶ 24-25. The Petitioner argues that his lawyer's failure to object constituted ineffective assistance because it allowed the jury to listen to hearsay and conclude that Officer Young was endorsing the victim's version of events. However, a lawyer's decision to allow leading questions is almost unreviewable because it is the kind of decision that is at the essence of in-court legal strategy. As the Seventh Circuit has noted, "[f]ailing to object to leading questions may be a matter of trial tactics and strategy. Counsel may have wanted to avoid drawing attention to certain testimony, or may have wished to avoid irritating the jury." *United States v. Pedigo,* 12 F.3d 618, 623 (7th Cir. 1993). Thus, it is hardly the kind of "error" that would warrant federal habeas relief. Moreover, the state courts correctly concluded that the questions were immaterial to the outcome given the victim's compelling testimony. *Howlett*, 2013 WI App 84, ¶ 27, 348 Wis. 2d 763, 833 N.W.2d 873. Thus, even if there were ineffective assistance, it was not prejudicial to

6

the outcome.

**5. Failure to Introduce Testimony about the Victim's Untruthfulness**

The Petitioner also argues that counsel was ineffective for failing to introduce the testimony of one of the victim's teachers, who would have testified that the victim had a reputation for being untruthful. The teacher in question, however, had once worked for the Petitioner's parents, and thus would have opened the door to questions about her own truthfulness or motivations. And, as the state courts noted, the testimony would only have been a vague assertion that the victim was untruthful. Stacked against the very detailed testimony the victim provided, which was far beyond the purview of a normal child's knowledge, such testimony would not have tipped the outcome of the case, and thus there was no showing of prejudice. Once again, these are very reasonable conclusions that do not come close to reaching the federal AEDPA standard for habeas relief.

**6. Impeachment**

The Petitioner also argues that counsel should have raised the fact that the victim had stolen a cell phone from a teacher some six months earlier. The state courts rejected the argument, noting that such evidence would not have been admissible because there was no pattern or routine of stealing phones. The Petitioner evidently wanted to argue to the jury that the victim had stolen his cell phone and then, when confronted with that fact, she concocted a story about his sexual assault of her. But the allegation about a prior cell phone theft did not even fit with that story, because with the first cell phone incident the victim admitted stealing it rather than inventing a cover story, much less one with as lurid details as we have here. The evidence was therefore inadmissible and largely irrelevant, and so counsel's failure to pursue that line of argument was a far cry from ineffective assistance.

7

**7. Accumulation of Errors**

The Petitioner argues that even if any of the above-alleged errors did not amount to ineffective assistance in their own right, the combination of errors must result in a finding of ineffective assistance. But, as noted above, none of the alleged errors even amounted to error, and so it does not matter whether they are considered individually or as a group. As the court of appeals noted, "zero plus zero equals zero." *Id.* at ¶ 38 (citing *Mentek v. State,* 71 Wis.2d 799, 809, 238 N.W.2d 752 (1976)). In addition, the court implicitly concluded that there was no prejudice given how strong the evidence was against the Petitioner. *Id.* Neither of these conclusions may be disturbed on federal habeas review.

**8. Additional Ineffective Assistance Claims**

The petition's eighth and ninth claims raise ineffective assistance arguments that the Petitioner raised in his collateral appeal. In short, he believes counsel should have hired an expert and should have introduced evidence about the victim's own sexual history. He also believes his postconviction counsel should have made these arguments.

The state court of appeals rejected these arguments on the basis of procedural default. Specifically, the Petitioner failed to raise these arguments in the initial appeal of his original postconviction proceeding, and so they were barred under *State v. Escalona-Naranjo*, 185 Wis.2d 168, 517 N.W.2d 157 (Wis. 1994). The court recognized that ineffective assistance of postconviction counsel could provide an excuse for failing to raise the argument. However, the trial court, addressing the merits of the underlying claims, found no ineffective assistance. Accordingly, postconviction counsel was not ineffective for failing to raise the arguments.

A federal court "may not review a federal claim . . . if the state court rests its decision on a

state procedural ground that is independent of the federal question and adequate to support the judgment." *Perry v. McCaughtry,* 308 F.3d 682, 690 (7th Cir. 2002) (citing *State v. Escalona-Naranjo*, 185 Wis.2d 168, 517 N.W.2d 157). Here, the state court of appeals explicitly relied on *Escalona* and found no justification for the failure to raise the arguments earlier. Accordingly, because the state court relied on an independent state procedural ground, no federal habeas relief is available.

I will also address the merits, however, given the complexity of the procedural default rule when ineffective assistance is raised as a bar. *See, e.g., Lee v. Baenen,* No. 10-C-040, 2013 WL 364226, at *7 (E.D. Wis. Jan. 30, 2013). Even if the claim were not defaulted, it is evident that the Petitioner's arguments were not meritorious. As the trial court observed, the expert Petitioner proposed was a psychologist who would have testified that the victim's statements were not fully credible because they had changed over time and could have been the product of inappropriate or inexperienced questioning. (ECF No. 15-9 at 60.) The trial court concluded that such evidence would not be admissible because it would represent the expert's view of the victim's credibility, a matter reserved to the jury. (*Id.*) In addition, the court found that, under *Strickland*, there was no prejudice because there was ample other evidence to convict the defendant, including testimony of another student who corroborated the victim's statements about being the last child dropped off on the days of the assaults. (*Id.* at 60-61.) These are reasonable conclusions, especially since this is not a case that cries out for expert testimony to address scientific matters like DNA evidence or gunshot residue. A psychologist's opinion about a child's credibility is hardly the kind of testimony that is obviously needed in a case like this. Given the "double deference" owed under AEDPA, it would be impossible to conclude that counsel was ineffective for failing to obtain an expert. In fact,

9

the Supreme Court has cautioned that the hiring of an expert is one of those decisions that is almost unreviewable: "[t]he selection of an expert witness is a paradigmatic example of the type of "strategic choic[e]" that, when made "after thorough investigation of [the] law and facts," is "virtually unchallengeable." *Strickland,* 466 U.S., at 690. We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired." *Hinton v. Alabama,* 134 S. Ct. 1081, 1089 (2014).

Similarly, counsel was not ineffective for failing to present evidence of the victim's previous alleged sexual contact with another student on the bus. The trial court found that such evidence would have been barred by the rape shield law and would have been unduly prejudicial. In short, because the events in question did not closely resemble each other, the rape shield law would have barred introduction of the evidence. (ECF No. 15-9 at 64.) Although the Petitioner argues that the contact could explain how the victim learned the explicit sexual terminology she used, that seems unlikely and is purely speculative. Whether or not the trial court correctly resolved the rape shield issue (and there is no reason to believe it was incorrect), the fact that there was even an arguable bar to the admission of the evidence in question means that counsel was not ineffective for failing to introduce the evidence. Even if the evidence were admissible, is not difficult to imagine that counsel would have been severely and rightly hesitant to bring up the "sexual history" of a nine-year-old victim, for fear of alienating the jury and engendering sympathy for the victim. Once again, the double deference owed under AEDPA precludes a federal court from undertaking any kind of searching, *ex post facto* review of counsel's performance on a matter like this. The trial court's handling of the issue precludes me from finding that it misapplied *Strickland*.

**B. Hearing**

The Petitioner also argues, somewhat confusingly, that he was entitled to another evidentiary hearing to address the motion for postconviction relief in which he raised the arguments described above. The state courts disagreed, finding that the Petitioner's arguments were conclusory and unmeritorious, meaning no hearing was warranted. *State v. Howlett,* 2015 WI App 90, ¶ 12, 871 N.W.2d 867, 365 Wis.2d 607 (Wis. Ct. App. 2015). Whether or not to grant a hearing for a postconviction motion is a matter of state procedural law. The state court of appeals did not cite any federal constitutional principles, much less any controlling precedent from the Supreme Court, in denying the request for a hearing. Neither does the Petitioner. Habeas relief is only available if a petitioner can demonstrate he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Because he has not identified any such violation, habeas relief is unavailable. Moreover, "[t]he failure to allege sufficient facts to warrant a hearing on a claim constitutes an adequate and independent state law ground for denying relief." *Lee v. Baenen,* No. 10-C-040, 2013 WL 364226, at *7 (E.D. Wis. Jan. 30, 2013); *Lee v. Foster,* 750 F.3d 687, 693 (7th Cir. 2014).

**C. Fundamental Miscarriage of Justice**

The Petitioner also argues (albeit in a response brief) that he is entitled to relief because there was a fundamental miscarriage of justice. As set forth above, however, the courts have concluded that the evidence was strong and the Petitioner has not identified any colorable issues. In addition, his argument on this point is cursory and fails to cite any additional evidence not before the jury. In short, he has presented no grounds for federal habeas relief.

**D. Ineffective Assistance of Appellate Counsel**

The Respondent believes that this court allowed the Petitioner to amend his petition to

11

include a claim for ineffective assistance of appellate counsel. However, the amendment was limited to the two issues described in Section 8 above, namely, the two additional ineffective assistance claims he raised in his second postconviction motion. It does not appear anywhere that the Petitioner has actually raised a claim for ineffective assistance of appellate counsel. Accordingly, I do not address this issue.

**E. Sufficiency of the Evidence**

The Petitioner also argues, in his 7th and 12th grounds for relief, that he is entitled to a new trial in the interests of justice. Both claims essentially are another way of repackaging the ineffective assistance claims described above. He asserts that because the evidence his counsel failed to introduce was not before the jury, the full matter was never tried.

The court of appeals refused to address this issue on the ground that it was undeveloped and was inadequately briefed. *State v. Howlett,* 2013 WI App 84, ¶ 39, 348 Wis.2d 763, 833 N.W.2d 873. This is an independent state law procedural ground, which precludes federal habeas review. In addition, the Petitioner has identified no federal constitutional principle that was violated during his trial or postconviction proceedings. As already noted, these claims are essentially a repackaging of his other claims, none of which justifies habeas relief. Consequently, I cannot conclude that the state courts erred in denying him a new trial.

**F. Motion for Reconsideration**

The Petitioner filed a motion to strike the Respondent's brief on the grounds that the brief was 35 pages long, in violation of the local rules. The court denied the motion on the grounds that the Petitioner's claims are far in excess of what is normally raised in a habeas proceeding. In fact, given the number of claims raised, the Respondent's brief is admirably succinct. Not happy with

that result, the Petitioner moved for reconsideration. The motion for reconsideration will be denied for the reasons already stated.

**III. Conclusion**

For the reasons given above, the petition is **DISMISSED**. The motion for reconsideration is **DENIED**. A certificate of appealability will be granted on the question of ineffective assistance of counsel. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline.

**SO ORDERED** this 30th day of January, 2017.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court